David WETHERHOLD

v.

RADIOSHACK CORPORATION.

Civil Action No. 04–01889.

United States District Court,
E.D. Pennsylvania.

Oct. 19, 2004.

Donald P. Russo, Esquire, Bethlehem, PA, for Plaintiff.

Michael L. Banks, Morgan Lewis & Bockius LLP, Sarah E. Bouchard, Morgan Lewis & Bockius LLP, Philadelphia, PA, for Defendant.

## *MEMORANDUM and ORDER*

PRATTER, District Judge.

## I. INTRODUCTION

This case involves a discharged employee's effort to maintain a wrongful discharge claim in the face of Pennsylvania's long-standing "at-will" employment doctrine by claiming that his discharge violated the public policy of Pennsylvania. The employer has moved to dismiss the claim, arguing that no such public policy exists in this instance. For the reasons discussed below, the Court holds that the Amended Complaint, while heavily dependent upon an indulgent view of the "fair notice" philosophy of federal pleading rules, sufficiently raises a potential violation of the public policy of the Commonwealth of Pennsylvania to defeat the motion to dismiss.

## II. BACKGROUND

The plaintiff, David Wetherhold ("Wetherhold"), was employed by RadioShack Corporation ("RadioShack") as store manager of its Lehigh Shopping Center store located in Bethlehem, Pennsylvania. *Amended Complaint, ¶ 5.* During his employment with RadioShack, Wetherhold alleges that he filed a report with the U.S. Department of Labor, Occupational Safety and Health Administration ("OSHA") after receiving numerous complaints from employees and customers concerning the air quality within the Bethlehem store, including complaints of illness as a result. *Amended Complaint, ¶ 11.* RadioShack promptly received a telephone call and then a letter from OSHA, dated February 27, 2002, indicating a complaint had been received that:

> [e]mployee(s) working in the [Lehigh Shopping Center] store are exposed to a potential bio-hazard resulting from black mold/mildew buildup behind the walls of the store. A noticeable odor has been identified by employees and customers alike. Employee(s) are experiencing symptoms to include respiratory problems that seem to correlate with times that employees are working in the store. During the construction of Gold's Gym next door, construction workers came across black mold while tearing out the wall resulting in them wearing respirators for personal protection.... [S]ince allegations of violations and/or hazards have been made, we request that you immediately investigate the alleged conditions and make any necessary corrections or modifications.

*Amended Complaint, Exhibit A.* RadioShack terminated the employment of Weth-

erhold on March 22, 2002. *Amended Complaint, ¶ 4.*

Wetherhold believes that his employment by RadioShack was terminated in retaliation for his report to OSHA, and he further alleges that this termination is in violation of the law and public policy of the Commonwealth of Pennsylvania, as a result of which he has sustained damage. *Amended Complaint, ¶¶ 14–16.*

Pursuant to Federal Rule of Civil Procedure 12(b)(6), RadioShack filed a motion to dismiss the Amended Complaint for Wetherhold's failure to state a claim upon which relief can be granted. According to RadioShack, Wetherhold's Amended Complaint is deficient because: 1) Wetherhold has not alleged a cognizable claim under Pennsylvania law, as interpreted under the state's presumptive "at-will" employment doctrine; 2) Wetherhold has neither identified nor alleged a recognized exception to the "at-will" employment doctrine that would give rise to a common law cause of action in Pennsylvania; and 3) the mere act of an employee lodging a complaint with OSHA, followed by the employer's subsequent termination of that employee allegedly in violation of OSHA regulations, does not demonstrate that the public policy of Pennsylvania has been implicated.

For the reasons stated below, the Motion to Dismiss filed by RadioShack is denied.

## III. DISCUSSION

### A. *Standard of Review*

A Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted tests the legal sufficiency of the complaint. *Winterberg v. CNA Ins. Co.,* 868 F.Supp. 713, 718 (E.D.Pa.1994). When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the complainant's allegations as true, *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984), and must consider "all reasonable inferences that can be drawn from them after construing them in the light most favorable to the non-movant." *Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1261 (3d Cir.1994). A complaint may be dismissed "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon,* 467 U.S. at 73, 104 S.Ct. 2229; *see also, Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) ("a complaint should not be dismissed for failure to state a claim unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief").

This case is based on the diversity of the parties, having been brought initially in the Northampton County Court of Common Pleas and then removed to federal court by RadioShack. Accordingly, this Court must apply the substantive law of the state where it sits. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Therefore, when deciding matters based on diversity jurisdiction, this Court considers decisions of the Pennsylvania courts and accepts decisions delivered by the Pennsylvania Supreme Court as controlling authority regarding substantive state law. *Ciccarelli v. Carey Canadian Mines, Ltd.,* 757 F.2d 548, 553 n. 3 (3d Cir.1985). The parties agree that the substantive issues presented all fall within the reach of Pennsylvania decisional and statutory law.

While the Court must look to substantive state law, procedural matters are within the domain of federal law. Accordingly, the pleading standards against which the Amended Complaint is to be measured are those set out in the Federal

Rules of Civil Procedure, most notably Fed.R.Civ.P. 8(a) and (e), which call upon the pleader to present "a short and plain statement of the claim" where "[e]ach averment . . . shall be simple, concise, and direct." The United States Supreme Court described the simplified pleading permitted by the Federal Rules as that which "will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47, 78 S.Ct. 99. Indeed, the Supreme Court has even reaffirmed the liberal notice-pleading requirements by stating that a prima facie case is "an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). These are the pleading standards the Court is obliged to apply to Wetherhold's Amended Complaint.

### B. The "At–Will" Employment Doctrine in Pennsylvania and its Exceptions

Wetherhold claims that he was subject to retaliatory and wrongful discharge in violation of the law and public policy of the Commonwealth of Pennsylvania. *Amended Complaint*, ¶¶ *9–15*. Therefore, the issue before the Court is whether the allegation of wrongful and retaliatory discharge, as stated in the Amended Complaint, states a claim upon which relief can be granted under the law of the Commonwealth of Pennsylvania.

■ Wetherhold acknowledges that in the Commonwealth of Pennsylvania, in the absence of a contractual or statutory restraint, there exists an "extremely strong" presumption that an employee is employed "at-will" unless a specific public policy exception applies. *McLaughlin v. Gastrointestinal Specialists, Inc.*, 561 Pa. 307, 750 A.2d 283, 287 (2000); *see also, Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974) (Pennsylvania law does not allow for a common law cause of action for wrongful discharge of an at-will employee). Thus, in Pennsylvania, an employer retains the right to terminate an employee for any reason (or no reason at all) unless the parties are bound by contract. *McLaughlin*, 750 A.2d at 287. The Pennsylvania Supreme Court has "steadfastly resisted any attempt to weaken the presumption of at-will employment" in the Commonwealth. *Id.* at 290.

However, an employee is entitled to bring a cause of action for termination in a very narrow set of circumstances where such termination would violate "a clear mandate of public policy" of the Commonwealth. *Id.* at 286. Subsequent to the Pennsylvania Supreme Court's dicta in *Geary* recognizing the potential for a wrongful termination claim premised upon a violation of public policy, the Court of Appeals for the Third Circuit held that Pennsylvania law provides for the tort of wrongful discharge for discharges that violate a clear mandate of the Commonwealth's public policy. *Woodson v. AMF Leisureland Centers, Inc.*, 842 F.2d 699 (3d Cir.1988); *Novosel v. Nationwide Ins. Co.*, 721 F.2d 894 (3d Cir.1983). Thereafter, *McLaughlin*, citing *Geary, supra*, confirmed that wrongful discharge claims could be actionable in Pennsylvania where the termination of an employee would violate a "clear mandate of public policy." 750 A.2d at 286.

Stating that a discharged employee, when looking for the appropriate mandate, "must do more than show a possible violation of federal statute," the Pennsylvania Supreme Court shed this light on the employee's task: "Public policy of the Commonwealth must be just that, the policy of this Commonwealth." *McLaughlin*, 750 A.2d at 289. The public policy of the Commonwealth is to be ascertained from

its laws and legal precedents and not from "supposed public interest." *Id.* at 288. Moreover, "a clear mandate of public policy is embodied in a constitutionally or legislatively established prohibition, requirement or privilege." *Smith v. Calgon Carbon Corp.*, 917 F.2d 1338, 1344 (3d Cir.1990), *cert. denied*, 499 U.S. 966, 111 S.Ct. 1597, 113 L.Ed.2d 660 (1991). The issue of public policy should strike at the heart of a "citizen's social right, duties and responsibilities." *McGonagle v. Union Fidelity Corp.*, 383 Pa.Super. 223, 556 A.2d 878, 882 (1989), *appeal denied*, 525 Pa. 584, 575 A.2d 115 (1990).

The Pennsylvania Supreme Court has declared the public policy of the Commonwealth by "examining the precedent within Pennsylvania, [its] Constitution, court decisions and statutes promulgated by [its] legislature." *McLaughlin*, 750 A.2d at 288. Furthermore, Pennsylvania courts have only "permitted employees to proceed with wrongful discharge cases when public policy concerns are clear," *Rothrock v. Rothrock Motor Sales, Inc.*, 810 A.2d 114, 118 (2002), and when the actions of the respective plaintiffs directly implicate a Pennsylvania law, legal duty, or the exercise of a fundamental right. *See e.g., Shick v. Shirey*, 552 Pa. 590, 716 A.2d 1231, 1237–38 (1998) (employee terminated in retaliation for filing a workers' compensation claim); *Rothrock*, 810 A.2d at 114 (employee discharged for refusing to deter another employee from pursuing a workers' compensation claim); *Highhouse v. Avery Transp.*, 443 Pa.Super. 120, 660 A.2d 1374 (1995) (employee discharged for filing unemployment benefits claim); *Raykovitz v. K Mart Corp.*, 665 A.2d 833 (Pa.Super.1995); *Field v. Philadelphia Electric Co.*, 388 Pa.Super. 400, 565 A.2d 1170 (Pa.Super.1989) (employee discharged for reporting violations of federal regulations regarding nuclear materials, an activity required by statute); and *Reuther v.*

*Fowler & Williams, Inc.*, 255 Pa.Super. 28, 386 A.2d 119 (1978) (employee discharged for serving on a jury, an obligation under state law).

Against this judicial framework, the Court must determine whether Wetherhold's Amended Complaint suffices.

## C. Explicit Adoption by Pennsylvania of OSHA Provisions

In its motion to dismiss Wetherhold's Amended Complaint, RadioShack places heavy reliance upon its interpretation of *McLaughlin*, contending that case "dictates that [Wetherhold's] claim be dismissed in its entirety." The Court disagrees.

The plaintiff in *McLaughlin*, 750 A.2d at 285, made internal complaints to her employer alleging that the employer was in violation of OSHA regulations. However, she neither made a direct complaint to OSHA nor did she complain to any agency within the Commonwealth. The *McLaughlin* plaintiff posed the Pennsylvania public policy issue as whether a claim can rest solely upon termination in violation of OSHA, and thus constraining the Pennsylvania Supreme Court to decide only that issue. In its decision, the supreme court emphasized that the plaintiff did not allege that she was fired in retaliation for making a complaint to a Commonwealth agency. *Id.* at 288. The court found that if the plaintiff had filed a complaint with a Commonwealth agency, and was allegedly fired in retaliation, such action would give rise to a claim because it "thwarts the administration of a Commonwealth agency and undermines the statutory obligations of the employer and employee, which a Pennsylvania statute governs." *Id.* However, RadioShack argues that a close and critical reading of *McLaughlin* does not support Wetherhold's argument

that his filing of an external complaint (with OSHA) regarding an OSHA violation was sufficient, presumably because *McLaughlin* should be read to only consider a complaint to an agency of the Commonwealth.

Certainly, the language of *McLaughlin* invites its use by both parties here and, indeed, appears to offer "something for everyone". Although this Court does not read *McLaughlin* as Wetherhold does, i.e., to suggest that a report to only OSHA is sufficient, the Court reads the *McLaughlin* decision (and the Pennsylvania Supreme Court's self-limiting reasoning) to undermine RadioShack's argument here. *McLaughlin* repeatedly points out that, in that case, no external complaint was made:

> It is important to note that Appellant [(McLaughlin)] argued to the Superior Court only that the public policy that was violated was that her termination violated OSHA, not any Pennsylvania statute governing Health and Safety.

*McLaughlin*, 750 A.2d at 286 n. 4.

> We stress that Appellant has raised in her statement of issues to this Court **only** whether federal **OSHA** prohibits retaliatory discharge and whether a Pennsylvania court has jurisdiction to decide a matter arising from **federal** OSHA. We have not been presented with any issue of public policy arising from a Pennsylvania statute governing Health and Safety, and we are therefore constrained to decide only those issues presented to us. *Pa. R.A.P. 2116* ("rule is to be considered in the highest degree mandatory, admitting of no exception; ordinarily no point will be considered which is not set forth in the statement of

questions involved or suggested thereby").

*Id.* at 286 (emphasis in original).

> This is not a case in which the employee avers that she made a complaint to a Commonwealth agency, as existed in *Shick*, [*infra*,] and was fired in retaliation. Such a case implicates the policy of the Commonwealth because it thwarts the administration of a Commonwealth agency and undermines the statutory obligations of the employer and the employee, which a Pennsylvania statute governs.

*Id.* at 288.

> [I]t is significant that in *Kilpatrick* [*v. Delaware County S.P.C.A.*, 632 F.Supp. 542, 545 (E.D.Pa.1986) ], the plaintiff appears to have made her complaints to a Commonwealth agency. Thus, to this extent, Kilpatrick is inapposite.

*Id.* at 289 n. 14.

■ Both RadioShack and Wetherhold have urged this Court to analyze *McLaughlin* closely. By doing so, in footnote 12 of the *McLaughlin* opinion, this Court has determined that, for purposes of the case at bar, *McLaughlin* instructs as to its extremely narrow reach by describing the issue that court was deciding as being "whether sole reference to a violation of federal law, without more, can announce the public policy of this Commonwealth for purposes of stating a claim for wrongful discharge." *McLaughlin*, 750 A.2d at 289 n. 12. Thus, resolution of the RadioShack motion turns on whether Wetherhold's Amended Complaint likewise solely refers to a violation of federal law and whether some public policy of Pennsylvania has allegedly been violated.[1]

---

**1.** RadioShack, in its *Reply Brief at 2–3,* incorrectly relies on *McLaughlin's* adoption of the reasoning in *Holmes v. Schneider Power Corp.*, 628 F.Supp. 937 (W.D.Pa.1986), *aff'd*, 806 F.2d 252 (3d Cir.1986), in an attempt to defeat Wetherhold's claim. *Holmes* held that the legislative scheme of a federal statute, by itself, does not provide any indication of

■ Equally prevalent in the text of the *McLaughlin* opinion is that court's insistence on clarity of Pennsylvania public policy:

> Although we ultimately found that [the plaintiff in *Geary* ] did not set forth a cause of action, in dicta we left open the possibility of a wrongful discharge claim in circumstances where a termination of an employee would violate a "clear mandate of public policy."

*McLaughlin*, 750 A.2d at 286 (citing *Geary*, 319 A.2d at 180).

> In *Shick*, [*supra*,] we continued to recognize that the exception to the employment at-will rule should be applied in only the narrowest of circumstances. However, we determined that an employer who fires an employee in retaliation for bringing a workers' compensation claim violates the public policy of this Commonwealth and can be liable at common law for wrongful discharge.

*McLaughlin*, 750 A.2d at 287 (citing *Shick*, 716 A.2d at 1231 (Pa.1998)). Moreover, the *McLaughlin* court did not believe that the plaintiff's arguments had

Pennsylvania public policy. *Id.* at 940. However, upon a close reading of the Pennsylvania Worker and Community Right–to–Know Act, 35 P.S. §§ 7301 *et. seq.* (the "PWCRA"), RadioShack's reliance on the *Holmes* reasoning is misplaced. In light of this Court's review of the PWCRA, *infra*, and the express limitations of the holding in *McLaughlin*, *supra*, RadioShack's embrace of the reasoning in *Holmes* is incompatible with PWCRA § 7319(b), which instructs that the PWCRA provisions

> [are] to be read in conjunction with **any** provision of **Federal** law providing for the identification, labeling or providing of information concerning hazardous substances **and is intended to supplement** such **Federal** regulation **in the interests of protecting the health and safety of citizens of the Commonwealth.**

articulated that her termination threatens a clear and substantial public policy in this Commonwealth. Therefore, as a matter of law, she could not overcome the presumption that Employer was free to fire her at will.

*Id.* Furthermore, "public policy is to be ascertained by reference to the laws and legal precedents and not from supposed public interest." *Shick*, 716 A.2d at 1237, quoting *Hall v. Amica Mutual Ins. Co.*, 538 Pa. 337, 648 A.2d 755, 760 (1994). The Pennsylvania Supreme Court also finds the state's public policy "by examining the precedent within Pennsylvania, looking to [its] Constitution, court decisions and statutes promulgated by [its] legislature." *McLaughlin*, 750 A.2d at 288. The *McLaughlin* court was not convinced that the plaintiff had shown

> how her discharge undermines any particular public interest of this Commonwealth. At most, she made an **internal complaint** to her employer, and **not to any public agency within the Commonwealth.** She points to no Pennsylvania statutory scheme that her discharge would undermine.... [I]t is of no moment that federal regulations **may** pro-

(emphasis added). This provision reads into the PWCRA similar sections from the Occupational Safety and Health Act of 1970, 29 U.S.C. § 660 (the "OSH Act") ("Discharge or discrimination against employee for exercise of rights under this chapter; prohibition; procedure for relief") and related regulations promulgated thereto, which, this Court believes, when properly read in conjunction, represent a "clear mandate of public policy" of the Commonwealth. *See McLaughlin*, 750 A.2d at 287. Therefore, because the ruling in *McLaughlin* was limited to the facts of the case and the appellant's specific arguments, *id.* at 286, this Court holds that *McLaughlin* does not preclude a wrongful discharge claim under the "public policy" exception to the "at-will" employment doctrine if an employee is terminated from his employment following the filing of a complaint with **either** a Commonwealth agency or OSHA.

vide administrative protection to employees who make safety violations to their employers **unless** of course the employee is able to articulate **a particular policy within the Commonwealth that is threatened.**

*Id.* (emphasis added).

The *McLaughlin* court also emphasized the distinction between the facts and allegations in both *Shick* and *Geary* from those being adjudicated:

This **is not** a case in which the employee avers that she made **a complaint to a Commonwealth agency,** as existed in *Shick,* and was fired in retaliation. **Such a case implicates the policy of the Commonwealth** because it thwarts the administration of a Commonwealth agency and undermines the statutory obligations of the employer and the employee, which a Pennsylvania statute governs. Here, however, **Appellant has not shown any policy of this Commonwealth that is violated,** and has not established how a private report to an employer would undermine the workings of any Commonwealth agency or any statutory mechanism within the Commonwealth. Indeed, in *Geary, supra,* this Court **refused to accept the premise** that an employer, who might have terminated an employee in retaliation for making **internal reports** regarding the safety of a product, threatened the public policy of this Commonwealth to such an extent that it outweighed the presumption of at-will employment.

*Id.* at 288–89 (emphasis added). As a result of these public policy concerns, the *McLaughlin* court held:

that in order to set forth a claim for wrongful discharge a Plaintiff must do more than show a possible violation of a federal statute that implicates only her own personal interest. The Plaintiff in some way must allege that some **public**

policy of **this** Commonwealth is implicated, undermined, or violated because of the employer's termination of the employee. Public policy of the Commonwealth must be just that, the policy of this Commonwealth.

*Id.* at 289 (emphasis in original).

The *McLaughlin* court also questioned, based on a distinguishable Superior Court ruling in *Field,* 565 A.2d at 1170, whether a "sole reference to a violation of federal law, without more, can announce the public policy of this Commonwealth for purposes of stating a claim for wrongful discharge." *McLaughlin,* 750 A.2d at 289 n. 12. Moreover, the *McLaughlin* court found "persuasive" and adopted the reasoning from *Holmes v. Schneider Power Corp.,* 628 F.Supp. 937 (W.D.Pa.1986), *aff'd,* 806 F.2d 252 (3d Cir.1986) and *Griffin v. Mullinix,* 947 P.2d 177 (Ok.1997), in which each court refused to allow allegations of OSHA violations to give rise to a wrongful discharge claim. *McLaughlin* emphasized that in *Holmes,*

because the plaintiff could not formulate any state statute or court decision that would be implicated, undermined, or violated because of his termination for reporting safety violations, the Plaintiff had not stated a clear mandate of public policy and [, therefore,] the court dismissed the wrongful discharge claim.

*McLaughlin,* 750 A.2d at 290 (citing *Holmes,* 628 F.Supp. at 940). Similarly, the Oklahoma Supreme Court, in *Griffin,* held:

because no Oklahoma articulation of public policy exists with regard to the private employer under the [state OSHA statute,] the federal statute, in itself, does not stand as a statement of Oklahoma public policy.

*McLaughlin,* 750 A.2d at 290 (quoting *Griffin,* 947 P.2d at 180). Adopting this

reasoning, that the Pennsylvania Supreme Court requires a clear, unambiguous determination of Pennsylvania public policy before permitting a claim for wrongful discharge, the *McLaughlin* court unambiguously stated that:

> it is a mistake to baldly point to a federal statute or administrative regulation and, **without more,** proclaim this as the public policy of the Commonwealth, such that every violation of any federal code, or statute becomes the basis for seeking a common law remedy against an employer.

*McLaughlin,* 750 A.2d at 290 (emphasis added).

Therefore, **on the specific facts alleged and arguments presented in *McLaughlin,*** the court held that to establish a claim for wrongful discharge in Pennsylvania, plaintiffs must show more than a possible violation of a federal statute implicating only their own personal interest. *Id.* at 289. Rather, a plaintiff must claim that "some **public** policy of **this** Commonwealth is implicated, undermined, or violated because of the employer's termination of the employee." *Id.* (emphasis in original). Additionally, the court held that "a bald reference to a violation of a federal regulation, without any more articulation of how the public policy of the Commonwealth is implicated, is insufficient to overcome the strong presumption in favor of the at-will employment relation." *Id.*

 Mindful of the liberal pleading standards discussed above, this Court concludes that the claims made by Wetherhold in his Amended Complaint meet the *McLaughlin* challenge. In the first instance, although Wetherhold has certainly been brief in his explanation of the public policy he claims has been violated, his pleading states unequivocally that his termination was a "violation of public policy of the Commonwealth of Pennsylvania." *Amended Complaint,* ¶ 14. Therefore, he is not relying on a "sole reference to a violation of federal law." *See McLaughlin,* 750 A.2d at 289 n. 12.

Wetherhold specifically alleges in his Amended Complaint that despite the fact that OSHA is a federal agency, "the workplace safety rules and regulations enforced by .OSHA essentially mirror" the public policy behind workplace safety rules promulgated under the Pennsylvania Health and Safety Act, 43 P.S. §§ 25–1, *et seq.* *Amended Complaint,* ¶ 25. As RadioShack correctly argues, this statute should have been referred to as the "General Safety Law." *Memorandum in Support at 6.*[2] RadioShack also correctly argues that the General Safety Law does not support Wetherhold's argument that the General Safety law mirrors the OSH Act. The General Safety Law merely regulates the safety of workplace equipment. *See* 43 P.S. § 25–2. However, in support of Wetherhold's claim that the "termination of an employee who has filed a report with OSHA violates the public policy of the Commonwealth," *Amended Complaint,* ¶ 15, in Wetherhold's opposition to the motion to dismiss, he does not reference the General Safety Law, but instead compares the OSH Act to the PWCRA and, specifically, § 7313(a) of that statute. *Memorandum in Opposition at 9.* This provision could preclude a Pennsylvania employer from terminating an employee as a result of the employee's complaint or protest regarding harmful and unsafe conditions in the workplace. *See Donofry v. Nazareth Hospital,* 721 F.Supp. 732, 734 (E.D.Pa.

---

2. *See also,* http:// www.dli.state.pa.us/landi/lib/landi/laws–regulations/bois/a–174.pdf (Internet website for the Pennsylvania Department of Labor and Industry, referring to 43 P.S. §§ 25–1, *et seq.* as the "General Safety Law") (last visited on Oct. 12, 2004).

1989). Applicable sections of the PWCRA state:

§ 7307 ("Notice")

(a) *Workplace postings.*-Every employer shall prominently post in every workplace, in a location or locations where notices to employees are normally posted:

(1) **Lists of all hazardous substances and special hazardous substances found in that workplace and all environmental hazards emitted or discharged therefrom.** In addition, upon request, an employer shall furnish to an employee, a list of the hazardous substances used or produced in that employee's work area. A new or newly assigned employee shall be offered a list when assigned to a work area. Such lists shall be updated as necessary but at least annually. (emphasis added).

§ 7313 ("Protection of employees")

(a) *General rule.*—**No employer shall discharge or cause to be discharged, or otherwise discipline or in any manner discriminate against, an employee because the employee has filed a complaint,** has assisted the department with respect to an inspection under section 14, has instituted or caused to be instituted any proceeding under or related to this act, has testified or is about to testify in any proceeding, has requested any information or properly refused work under section 5 or has exercised any right afforded pursuant to the provisions of this act. (emphasis added).

§ 7314 ("Complaints and investigations")

(a) *Procedure.*—The [Department of Labor and Industry] is hereby empowered to prevent any violations of this act.... Any person who believes there is a violation by an employer or supplier of this act or any part thereof **may** file a complaint, within 180 days of the viola-

tion, with the department. The complaint shall be in writing, verified, and shall set forth the grounds for the complaint. Upon request of the complainant, his or her identity shall not be revealed. Within 30 days after receipt of the complaint, the department shall so notify the respondent in writing and permit the respondent to demonstrate compliance with this act. (emphasis added).

§ 7319 ("Construction of act")

(b) *Construction with Federal law.*— **This act is to be read in conjunction with any provision of Federal law** providing for the identification, labeling or providing of information concerning hazardous substances **and is intended to supplement such Federal regulation in the interests of protecting the health and safety of citizens of the Commonwealth.** (emphasis added).

Similar to PWCRA § 7313, an employer may not engage in retaliatory or wrongful discharge under the OSH Act, 29 U.S.C.A. § 660:

(c) *Discharge or discrimination against employee for exercise of rights under this chapter; prohibition; procedure for relief*

(1) No person shall discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter or has testified or is about to testify in any such proceeding or because of the exercise by such employee on behalf of himself or others of any right afforded by this chapter.

(2) Any employee who believes that he has been discharged or otherwise discriminated against by any person in violation of this subsection **may,** within thirty days after such violation occurs, file a complaint with the Secretary alleg-

ing such discrimination. Upon receipt of such complaint, the Secretary shall cause such investigation to be made as he deems appropriate. If upon such investigation, the Secretary determines that the provisions of this subsection have been violated, he shall bring an action in any appropriate United States district court against such person. In any such action the United States district courts shall have jurisdiction, for cause shown to restrain violations of paragraph (1) of this subsection and order all appropriate relief including rehiring or reinstatement of the employee to his former position with back pay. (emphasis added).

Furthermore, the related OSH Act regulations (the "OSHAR"), 29 C.F.R. § 1977.9 ("Complaints under or related to the Act"), provide:

(a) **Discharge of, or discrimination against, an employee because the employee has filed "any complaint * * * under or related to this Act * * * *" is prohibited** by section 11(c). An example of a complaint made "under" the Act would be an employee request for inspection pursuant to section 8(f). However, this would not be the only type of complaint protected by section 11(c). The range of complaints "related to" the Act is commensurate with the broad remedial purposes of this legislation and the sweeping scope of its application, which entails the full extent of the commerce power. (See Cong. Rec., vol. 116 p. P. 42206 Dec. 17, 1970).

(b) Complaints registered with other Federal agencies which have the authority to regulate or investigate occupational safety and health conditions are complaints "related to" this Act. Likewise, **complaints made to State or local agencies regarding occupational safety and health conditions would be "re-**lated to" the Act. Such complaints, however, must relate to conditions at the workplace, as distinguished from complaints touching only upon general public safety and health.

(c) Further, the salutary principles of the Act would be seriously undermined if employees were discouraged from lodging complaints about occupational safety and health matters with their employers. (Section 2(1), (2), and (3)). Such complaints to employers, **if made in good faith,** therefore would be related to the Act, and an employee would be protected against discharge or discrimination caused by a complaint to the employer. (emphasis added).

The public policy violation that Wetherhold references in his *Amended Complaint,* ¶ *15* gives rise to a cause of action when the PWCRA is properly read in conjunction with the OSH Act. *See* the PWCRA, the OSH Act and OSH Act regulations (the "OSHAR"), 29 C.F.R. §§ 1977.5 ("Persons protected by section 11(c)") and 1977.9 ("Complaints under or related to the Act").

RadioShack argues that the PWCRA "has no application in this case" and that, while the PWCRA "imposes a duty upon employers to make available to employees and to the general public the identity of chemicals used in the workplace and information about the possible health hazards posed by the use of or exposure to hazardous substances," 35 P.S. § 7301, "mold" is not included within the Pennsylvania Code as a substance that the Commonwealth considers hazardous under the PWCRA. *See* 34 Pa.Code § 323.1, App. A (2004); *see also,* http:/ /www.pacode.com/secure/data/034/chapter323/chap323toc.html ("Chapter 323. Hazardous Substance List") (last visited on Oct. 12, 2004) (hereafter, the "Appendix"). However, pursuant to the standards established in

*McLaughlin* and a literal reading of the PWCRA (in conjunction with the OSH Act and its regulations, as required by the PWCRA), this Court is not constrained to rule at this juncture that black mold must be identified in the Appendix to PWCRA as a hazardous substance for Wetherhold's claim to withstand a motion to dismiss. Complaints to the employer, **made in good faith,** are related to the OSH Act, 29 C.F.R. § 1977.9(c), and employees are protected against discharge or discrimination resulting from such a complaint. Thus, the fact that black mold is not specifically on the Commonwealth's hazardous substance list does not vitiate the protections from wrongful discharge of either the OSH Act or the PWCRA.

Despite the fact that black mold may not be listed by the Commonwealth as being a hazardous substance and Wetherhold initially referenced the wrong statute in his Amended Complaint, Wetherhold has sufficiently alleged an implication of public policy of the Commonwealth as this Court reads that policy in the PWCRA.

To be sure, it may have been more efficient for Wetherhold to have made a specific reference to section 7319 of the PWCRA in his Amended Complaint. However, the combination of liberal "notice pleading" obligations with the fact that the Commonwealth's legislature has instructed that the PWCRA is "to be read in conjunction with" OSHA defeats the RadioShack motion. *See* PWCRA § 7319(b). Wetherhold has made more than "a bald reference to a violation of a federal regulation," *see McLaughlin,* 750 A.2d at 290, by citing the PWCRA, which clearly implicates and defines the public policy of the Commonwealth by explicitly stating that the PWCRA

**is to be read in conjunction with any provision of Federal law** providing for the identification, labeling or providing of information concerning hazardous substances **and is intended to supplement such Federal regulation in the interests of protecting the health and safety of citizens of the Commonwealth.**

§ 7319(b) ("Construction with Federal law") (emphasis added). The OSH Act is certainly the type of federal law contemplated by the PWCRA and, upon a plain reading of the OSH Act, Wetherhold makes a persuasive argument that the public policy behind the OSH Act was adopted by the Commonwealth when the Legislature passed the PWCRA. Therefore, Wetherhold's allegations are sufficient "to overcome the strong presumption in favor of the at-will employment relation," *see McLaughlin,* 750 A.2d at 289, because an objective reading of PWCRA § 7319(b) supports the intimation by Wetherhold that a Commonwealth health and safety law reflects "the same public policy expressed by the federal government under OSHA," *see Amended Complaint,* ¶ 28.

RadioShack also attempts to distinguish Wetherhold's claim for wrongful discharge from previous holdings of the Pennsylvania Supreme Court permitting such claims. As discussed above, RadioShack incorrectly asserts that Wetherhold's complaint "was not premised upon a Pennsylvania law or any legal duty to report." Therefore, RadioShack argues that Wetherhold "failed to demonstrate how lodging a complaint with OSHA 'thwarts the administration of a Commonwealth agency and undermines the statutory obligations of the employer and employee. . . .'" *Memorandum in Support at 7* (citing *McLaughlin,* 750 A.2d at 288). However, this Court finds ample support in *McLaughlin,* the PWCRA and the OSH Act regarding the allegation that "a termination of an employee who has filed a report with OSHA

violates the public policy of the Commonwealth," *Amended Complaint,* ¶ *15,* is premised upon a Pennsylvania law. The PWCRA must be read in conjunction with the OSH Act and the termination of an employee for filing a complaint under either of those laws, with either the applicable federal or state agency, is a violation of the PWCRA. *See* PWCRA, §§ 7313 and 7319, OSH Act § 660(c) and OSHAR §§ 1977.5 and 1977.9.

■ Because Wetherhold filed a complaint under the OSH Act and was terminated soon afterwards, the allegation triggers the possible violation of a clear mandate of Pennsylvania's public policy, *see McLaughlin,* 750 A.2d at 287, which can be gleaned from reading the applicable sections of the PWCRA and OSH Act, *supra.*

### D. Statute of Limitations

■ Section 7314 of the PWCRA defeats RadioShack's final argument that Wetherhold's complaint is an effort to circumvent OSHA's thirty day statute of limitations for asserting a claim of retaliation given that Wetherhold never filed a formal complaint with a Commonwealth agency. PWCRA § 7314 ("Complaints and investigations") provides:

> (a) *Procedure.*—The department is hereby empowered to prevent any violations of this act.... Any person who believes there is a violation by an employer or supplier of this act or any part thereof **may** file a complaint, within 180 days of the violation, with the department. The complaint shall be in writing, verified, and shall set forth the grounds for the complaint. (emphasis added)

A straightforward reading of this section of the statute demonstrates that the filing of a complaint with the Commonwealth is not required, but merely available as an avenue of redress. Therefore, because the PWCRA must be read in conjunction with the OSH Act, an employee is not required to file a complaint with the Department of Labor and Industry, the responsible Commonwealth Agency. *See* PWCRA §§ 7302 ("Definitions") and 7314 ("The department is hereby empowered to prevent any violations of this act."). In the alternative, the public policy of the Commonwealth is still implicated, undermined or violated, if an employee files a complaint with OSHA and, in retaliation for that complaint, his employment is terminated. *See McLaughlin* at 289.

### IV. CONCLUSION

It is clear from the Pennsylvania Worker and Community Right-to-Know Act, 35 P.S. §§ 7301, *et seq.* (2004), the Occupational Safety and Health Act of 1970, 29 U.S.C. § 660 (2004) and the regulations promulgated thereunder, that the public policy of the Commonwealth of Pennsylvania is violated if an employer terminates an employee for engaging in protected activity under either of those state or federal laws. Consequently, consistent with the Pennsylvania Supreme Court's *McLaughlin* decision, this Court finds that the termination of an employee who has filed a report with OSHA violates the public policy of the Commonwealth of Pennsylvania, as articulated in the PWCRA, and relief for an allegation of wrongful termination could be granted under some set of facts consistent with Wetherhold's allegations, *see Hishon v. King & Spalding,* 467 U.S. at 73, 104 S.Ct. 2229. Accordingly, the Motion to Dismiss is DENIED. An Order to such effect follows.

### ORDER

AND NOW, this 19th day of October, 2004, upon consideration of the Motion to Dismiss the Amended Complaint and the

accompanying Memorandum of Law (Docket No. 4), as well as the Opposing Memorandum (Docket No. 5), the Reply Brief (Docket No. 6), and following oral argument, it is hereby ORDERED that the Motion to Dismiss is DENIED. It is further ORDERED that Defendant RadioShack shall file and serve an answer to the Amended Complaint within twenty-one (21) days of the date of this ORDER.