J-A25043-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| FREY LUTZ CORPORATION, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| E.R. STUEBNER, INC., | |
| Appellee | No. 883 EDA 2014 |

Appeal from the Order Entered February 18, 2014
in the Court of Common Pleas of Chester County
Civil Division at No.: 2013-03233-CT

BEFORE:  DONOHUE, J., WECHT, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                         **FILED APRIL 07, 2015**

Appellant, Frey Lutz Corporation, appeals from the order sustaining the preliminary objections of Appellee, E. R. Stuebner, Inc., and dismissing Appellant's complaint with prejudice.  Appellant, an HVAC[1] contractor, claims as a third party beneficiary to a contract provision making Appellee, the general contractor, financially responsible to other prime contractors on the same project for undue delay, notwithstanding a separate definitional provision disclaiming the creation of any contractual relationship except between the school district and the general contractor.  We vacate and remand.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Heating, ventilating, and air conditioning.

This is a contract dispute between two prime contractors for the construction of an elementary school in the Kennett Consolidated School District (sometimes referred to in the contract documents as the Owner). Appellant executed a contract as of January 12, 2010, with the School District to provide HVAC construction for the New Bancroft Elementary School. Appellee executed a similar contract as of the same date, for general construction of the same project. Both contracts were executed on a model form contract, with additional specific information inserted.[2] Appellant alleges Appellee is liable for delays on the project.

Two provisions of the Stuebner contract are at issue in this appeal. For clarity and completeness we present both provisions in their entirety:

§ 1.1.2 THE CONTRACT

The Contract Documents form the Contract for Construction. The Contract represents the entire and integrated agreement between the parties hereto and supersedes prior negotiations, representations or agreements, either written or oral. The Contract may be amended or modified only by a Modification. The Contract Documents shall not be construed to create a contractual relationship of any kind (1) between the Architect and Contractor, (2) between the Construction Manager and Contractor, (3) between the Architect and Construction Manager, (4) between the Owner and a Subcontractor or Sub-subcontractor or (5) between any persons or entities other than the Owner and Contractor. The Construction Manager and Architect shall, however, be entitled to performance and

---

[2] Both contracts used the same form: the AIA [American Institute of Architects] Document A101/CMa — 1992, "Standard Form of Agreement Between Owner and Contractor where the basis of the payment is a STIPULATED SUM" (Construction Manager-Adviser edition).

enforcement of obligations under the Contract intended to facilitate performance of their duties.

\* \* \*

§3.10.2 [CONTRACTOR'S CONSTRUCTION SCHEDULE]

\* \* \*

.3: The Contractors [sic] shall cooperate and consult with other Prime Contractors during the construction of this Project. The Contractor shall schedule and execute his Work so as to avoid delay to other contractors. **The Contractor is financially responsible to the other prime contractors for undue delay caused by him to other prime contractors on the Project.** The Contractor shall indemnify and hold harmless the Owner, Architect, and Construction Manager for any claims, losses or delays of any kind made by other contractors.

(E.R. Stuebner, Inc. Contract with Kennett Consolidated School District, dated as of January 12, 2010, §§ 1.1.2; 3.10.2.3) (emphasis added).

On April 9, 2013, Appellant filed a complaint against Appellee under section 3.10.2.3 of the contract between the Owner/School District and Appellee. (**See** Complaint, 4/09/13, at 3-4).

Appellee filed preliminary objections, maintaining that Appellant could not recover as a third party beneficiary because under § 1.1.2 of the General Conditions, both parties, Appellee and the School District, disclaim the intention to create a contractual relationship of any kind between various enumerated entities. (**See** Preliminary Objections, 5/22/13, at 4).

The trial court agreed, sustained the preliminary objections, and dismissed the complaint with prejudice. (**See** Order, 2/18/14; Trial Court Opinion, 5/05/14, at 1). This timely appeal followed.[3]

Appellant raises two questions for our review on appeal.

> 1. Whether the Court of Common Pleas erred when it sustained the Preliminary Objections of E.R. Stuebner, Inc. because Section 3.10.2.3. of the General Conditions establishes Frey Lutz Corporation as a third party beneficiary?
>
> 2. Whether the Court of Common Pleas erred when it sustained the Preliminary Objections of E.R. Stuebner, Inc. because Section 1.1.2 of the General Conditions does not expressly disclaim Frey Lutz Corporation's third party beneficiary rights?

(Appellant's Brief, at 4).

Appellant argues that the trial court's exclusionary reading of the "no contractual relationship" language of section 1.1.2(5) would render "superfluous" the "financially responsible to the other prime contractors" language of section 3.10.2.3. (Appellant's Brief, at 9). We agree.

Our standard of review when the trial court sustains preliminary objections is well-settled:

> Our standard of review of an order of the trial court overruling or granting preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on

---

[3] Appellant filed a timely statement of errors on April 25, 2014. **See** Pa.R.A.P. 1925(b). The trial court filed an opinion on May 5, 2014. **See** Pa.R.A.P. 1925(a).

preliminary objections, the appellate court must apply the same standard as the trial court.

Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. **If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.**

\* \* \*

It is also well[-]established that under the law of contracts, in interpreting an agreement, the court must ascertain the intent of the parties.

In the cases of a written contract, the intent of the parties is the writing itself. If left undefined, the words of a contract are to be given their ordinary meaning. When the terms of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the document itself. When, however, an ambiguity exists, parol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is patent, created by the language of the instrument, or latent, created by extrinsic or collateral circumstances.

With specific reference to what constitutes "ambiguity" in the context of contract interpretation, our Supreme Court has opined as follows:

Contractual language is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. This is not a question to be resolved in a vacuum. Rather, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts. We will not, however, distort the meaning of the language or

- 5 -

resort to a strained contrivance in order to find an ambiguity.

Additionally, [i]t is axiomatic that contractual clauses must be construed, whenever possible, in a manner that effectuates **all of the clauses being considered**. It is fundamental that one part of a contract cannot be so interpreted as to annul another part and that writings which comprise an agreement must be interpreted as a whole.

**Lenau v. Co-eXprise, Inc.**, 102 A.3d 423, 428-30 (Pa. Super. 2014)

(citations and internal quotation marks omitted) (emphases added).

Similarly,

The interpretation of any contract is a question of law and this Court's scope of review is plenary. Moreover, we need not defer to the conclusions of the trial court and are free to draw our own inferences. In interpreting a contract, the ultimate goal is to ascertain and give effect to the intent of the parties as reasonably manifested by the language of their written agreement. When construing agreements involving clear and unambiguous terms, this Court need only examine the writing itself to give effect to the parties' understanding. This Court must construe the contract only as written and may not modify the plain meaning under the guise of interpretation.

\* \* \*

Moreover, when the language of a contract is clear and unequivocal, courts interpret its meaning by its content alone, within the four corners of the document.

**Stephan v. Waldron Elec. Heating and Cooling LLC**, 100 A.3d 660, 665 (Pa. Super. 2014) (internal quotation marks and citations omitted).

[W]e accept as true the material facts set forth in [a]ppellee's complaint along with any reasonable inferences therefrom. The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible.

*Shafer Elec. & Const. v. Mantia*, 96 A.3d 989, 994 (Pa. 2014) (citations and internal quotation marks omitted). Furthermore, it is well-settled that "[a]n agreement or instrument which reduces legal rights which would otherwise exist is strictly construed against the party asserting it and must spell out with the utmost particularity the intention of the parties." *Maloney v. Valley Medical Facilities, Inc.*, 946 A.2d 702, 707 (Pa. Super. 2008), *affirmed*, 984 A.2d 478 (Pa. 2009) (citation omitted). "Pennsylvania contract law prescribes that, 'an interpretation will not be given to one part of the contract which will annul another part of it.'" *Id.* (citing *Capek v. Devito*, 767 A.2d 1047, 1050 (Pa. 2001)).

Here, in its Rule 1925(a) opinion, the trial court concluded that Appellant offered "a tortured interpretation" of the definitional language in section 1.1.2. (Trial Ct. Op., at unnumbered page 4). We are constrained to disagree.

Preliminarily, we note that the trial court's reasoning reads more into the definitional section than the context, or any controlling authority, requires or permits. Section 1.1.2, in relevant part, says no more than that the contract documents "shall not be construed to create a contractual relationship of any kind," with five relationships enumerated. (Stuebner Contract, at § 1.1.2).

However, Appellant is not claiming as a contracting party under the Stuebner contract. It is claiming as a third party beneficiary. A contracting

party and a third party beneficiary to a contract are mutually exclusive positions; neither Appellee nor the trial court offers any legal authority in support of their assumed equivalence. The trial court erred by accepting Appellee's argument and reading them as equivalent.

The legal principles controlling third party beneficiary status are well-settled.

> "In order for a third party beneficiary to have standing to recover on a contract, both contracting parties must have expressed an intention that the third party be a beneficiary, and that intention must have affirmatively appeared in the contract itself." ***Scarpitti v. Weborg***, 530 Pa. 366, 609 A.2d 147, 149 (1992). Furthermore,

> to be a third party beneficiary entitled to recover on a contract it is not enough that it be intended by **one** of the parties to the contract and the **third person** that the latter should be a beneficiary, but **both parties to the contract** must so intend and must indicate that intention in the contract; in other words, a promisor cannot be held liable to an alleged beneficiary of a contract unless the latter was within his contemplation at the time the contract was entered into and such liability was intentionally assumed by him in his undertaking.

> ***Spires v. Hanover Fire Ins. Co.***, 364 Pa. 52, 70 A.2d 828, 830–31 (1950) (emphasis in original). While ***Spires*** was overruled by ***Guy v. Liederbach***, 501 Pa. 47, 459 A.2d 744 (1983), it was only overruled "to the extent that it states the exclusive test for third party beneficiaries." ***Id.*** at 751; ***accord Burks v. Fed. Ins. Co.***, 883 A.2d 1086, 1088 (Pa. Super. 2005).

> In ***Guy***, our Supreme Court established a "narrow class of third party beneficiaries." ***Scarpitti***, 609 A.2d at 151. This narrow exception established a "restricted cause of action" for third party beneficiaries by adopting Section 302 of the Restatement (Second) of Contracts (1979). ***Scarpitti***, 609 A.2d at 151. Section 302 involves a two-part test to determine

- 8 -

whether one is a third party beneficiary to a contract, which requires that (1) the recognition of the beneficiary's right must be appropriate to effectuate the intention of the parties, and (2) the performance must satisfy an obligation of the promisee to pay money to the beneficiary or the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance. ***Guy***, 459 A.2d at 751 (quotation marks omitted); ***accord Burks v. Fed. Ins. Co.***, 883 A.2d 1086, 1088 (Pa. Super. 2005). Thus, even when the contract does not expressly state that the third party is intended to be a beneficiary, the party may still be a third party beneficiary under the foregoing test. ***Burks***, 883 A.2d at 1088. "But ***Guy*** did not alter the requirement that in order for one to achieve third party beneficiary status, that party must show that both parties to the contract so intended, and that such intent was within the parties' contemplation at the time the contract was formed." ***Id.***

***Kirschner v. K & L Gates LLP***, 46 A.3d 737, 762 (Pa. Super. 2012), *appeal denied*, 65 A.3d 414 (Pa. 2013).

Here, on review, we conclude that both of the parties (Appellee Stuebner and the school district), expressly intended that the other prime contractors be third party beneficiaries under the plain meaning of the "financially responsible to the other prime contractors for undue delay" language of section 3.10.2.3. The trial court's exclusionary reading of section 1.1.2 annuls the protection of the financial responsibility clause, in violation of the contract interpretation principles set forth in ***Lenau***, ***supra*** at 430. The trial court erred in interpreting the contract by ignoring the plain unambiguous meaning of the financial responsibility clause. ***See Kirschner***, ***supra*** at 762; ***Maloney***, ***supra*** at 707.

The trial court also posits that Appellant has an indirect remedy because it could sue the school district. (***See*** Trial Ct. Op., at unnumbered

page five). However, the relevant provision of the contract only says that that the School District has a right to reimbursement from Appellee Stuebner. The trial court offers no controlling authority for its inferential interpretation that Appellant Frey Lutz can claim indirectly through the School District. Furthermore, the trial court offers no authority in support of its assumption that the School District's right of indemnification against Stuebner includes a contractual obligation of reimbursement to Appellant. (*See id.*).

Moreover, as noted by Appellant, section 8.3.2 of the Stuebner contract (as well as the Frey Lutz contract) expressly **prohibits** claims against the School District for delays "**from any cause whatsoever** . . . including . . . the actions or inactions of other contractors[.]" (Stuebner Contract, at § 8.3.2) (emphasis added). The trial court's assumption of an alternative available remedy is contradicted by the plain language of the contracts.[4]

---

[4] Appellee also maintains in a footnote that Appellant Frey Lutz was not intended to be a beneficiary of the Stuebner contract under the Separation Act, (71 P.S. § 1618). (*See* Appellee's Brief, at 22 n.2). Appellee asserts, correctly, that the Separation Act applies to public school building construction contracts. (*See id.*, (citing *Mechanical Contractors Ass'n of E. Pa., Inc. v. Commonwealth, Dept. of Educ.*, 934 A.2d 1262, 1271 (Pa. 2007))). However, here there is no dispute that the Separation Act, (mandating separate contracts), was complied with in the contract under review. Further, the specific claim of waiver at issue in *Mechanical Contractors*, *supra*, is not present in this appeal. We conclude the argument based on the Separation Act is undeveloped and without merit. *(Footnote Continued Next Page)*

We are constrained to conclude that the trial court erred in its interpretation of the contract, in sustaining the preliminary objections, and in its dismissal of the complaint with prejudice.

Order vacated. Case remanded to the trial court for disposition in accordance with this decision.

Judge Wecht joins the Memorandum.

Judge Donohue files a Concurring Memorandum in which Judge Wecht joins.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/7/2015

---

*(Footnote Continued)* ──────────────

On independent review, we find nothing in the Separation Act which mandates a result contrary to our disposition.